UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

George Winston Simonds,

Plaintiff,

v. Civil Action No. 1:10-CV-317

Michael J. Astrue,
Commissioner of Social Security,

Defendant.

**REPORT AND RECOMMENDATION**
(Docs. 12, 19, 24)

This is a social security disability benefits case brought by Plaintiff George W. Simonds against the Commissioner of Social Security ("Commissioner") under 42 U.S.C. § 405(g). Simonds has filed a motion seeking to remand the matter to the Commissioner for consideration of new evidence pursuant to sentence six of 42 U.S.C. § 405(g). (Doc. 24.) The Commissioner opposes the motion. (Doc. 25.) The parties have also filed cross-motions under sentence four of 42 U.S.C. § 405(g), seeking reversal and affirmance, respectively, of the Commissioner's denial of Simonds' application for disability insurance benefits. (Docs. 12, 19.)

**Background**

Simonds was thirty-seven years old on the alleged disability onset date. He has limited memory of his childhood, other than being neglected and abused by family members, particularly his father. He had a troubled adolescence, dropping out of high

school during the eleventh grade, using drugs as a young teenager, and engaging in criminal activity such as petty larceny and disorderly conduct. He has work experience as a ski lift operator, a maintenance worker, and a truck driver. During the alleged disability period, Simonds lived with and cared for his preschool-aged son. At the time of the administrative hearing, his daily activities included transporting his son to and from school, attending his son's school events, cleaning the house, preparing meals for himself and his son, and shopping for groceries. Simonds claims that he avoids going out in public more than necessary because being around people causes him anxiety and makes him nervous. He further claims that he hates people and does not want to be around anyone other than his son.

In February 2008, Simonds filed applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to the disability application, he claims that, since December 16, 2006, he has been unable to work due to agoraphobia[1], social phobia, depression, anxiety, a sleep disorder, learning disabilities, back and hip problems, memory loss, and migraine headaches. (AR 139.) On June 21, 2010, Administrative Law Judge ("ALJ") Dory Sutker held a hearing on Simonds' application. Simonds represented himself at the hearing, and his vocational rehabilitation counselor, Lawrence Seavey, testified on his behalf. In addition, vocational expert Howard Steinberg testified at the hearing. On July 8, 2010, the ALJ issued a decision finding that, although Simonds had the severe impairments of degenerative changes of

[1] "Agoraphobia" is defined as "[a] mental disorder characterized by an irrational fear of leaving the familiar setting of home, or venturing into the open, so pervasive that a large number of external life situations are entered into reluctantly or are avoided; often associated with panic attacks." STEDMAN'S MEDICAL DICTIONARY 40 (28th ed. 2006).

the thoracic and lumbar spine, an affective disorder, and an anxiety disorder, he was not disabled from December 16, 2006, the alleged disability onset date, through the date of the decision.

On September 8, 2010, Attorney Judith Brownlow submitted a letter to the Decision Review Board ("DRB"), advising that she had been retained by Simonds and was attaching "new evidence" which had not been presented to the ALJ, including an August 2010 letter and treatment notes dated from October 2009 through July 2010 from Simonds' counselor, Maggie Comparetta, as well as a statement from Simonds' brother, John Simonds, sworn to on September 2, 2010. (AR 105-10.) The August 2010 letter from counselor Comparetta referenced (but did not attach) "notes" from "Dr. Root," which also had not been presented to the ALJ by the time she made her decision. (AR 106.) On October 25, 2010, the DRB notified Simonds that it had not completed its review of the claim within the allotted time, making the ALJ's decision final. On December 21, 2010, Simonds filed a Complaint, initiating this action. (*See* Doc. 3.)

**Analysis**

In his motion seeking remand under sentence six of 42 U.S.C. § 405(g), Simonds contends that the Court should remand this case for consideration of Dr. Richard Root's April 12, 2010 neuropsychological evaluation. (*See* Doc. 24-1.) Therein, Dr. Root revealed and discussed the results of psychometric testing on Simonds, concluding that Simonds "is functioning in the low average range of intellectual ability." (*Id.* at 6.) Additionally, Dr. Root diagnosed Simonds with panic attacks with agoraphobia, depressive disorder, learning disorder, avoidant and schizoid personality disorder traits,

occupational problems, and "Problems Related to the Social Environment." (*Id.* at 7.) Dr. Root assigned a global assessment of functioning ("GAF") score of 50 to Simonds[2], and recommended that Simonds continue with individual psychotherapy and vocational rehabilitation counseling. (*Id.* at 7-8.) Also noteworthy, Dr. Root stated in the evaluation that the test results "are consistent with significant levels of depression and anxiety as well as Attention Deficit Hyperactivity Disorder problems and anti-social problems." (*Id.* at 7.) As noted above, the ALJ was unaware of the existence of this evaluation at the time she made her decision. Moreover, the evaluation is not contained in the administrative record.

Pursuant to 42 U.S.C. § 405(g), "[t]he court may . . . at any time order additional evidence to be taken before the Commissioner . . ., but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." In applying this provision, the Second Circuit has developed a three-part test, allowing supplementation of the record where evidence is:

> (1) 'new' and not merely cumulative of what is already in the record . . .[; and] (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative . . .[; and (3) where there is] good cause for [the claimant's] failure to present the evidence earlier."

*Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991) (internal citations omitted).

[2] A GAF score of "41-50" indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed. 2000).

Simonds argues that Dr. Root's evaluation constitutes "new" evidence because it includes the results of psychometric testing which are not contained in the administrative record. (Doc. 24 at 2.) The Commissioner appears to concede that the evidence meets this prong of the three-part test, but for different reasons. (*See* Doc. 25 at 3 ("Even assuming Dr. Root's report is 'new,' as it concerns the relevant time period and was not before the Agency at the administrative level," . . . .).) I find that the evidence is in fact "new," as it was not submitted to the ALJ prior to her issuance of a decision and was not considered by the DRB before the time period for its review expired. *See DelValle v. Apfel*, 97 F. Supp. 2d 215, 222 (D. Conn. 1999) ("'New' evidence is simply that evidence which has not been considered previously during the administrative process."). Moreover, Dr. Root's evaluation is not cumulative of what is already in the record, given that the record does not contain psychometric test results and contains very few medical evaluations from "acceptable medical sources," 20 C.F.R. § 404.1513(a)(2), such as Dr. Root, a licensed psychologist.

I also find that the evidence is "material." The Second Circuit has explained that "[t]he concept of materiality requires . . . a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide [the] claimant's application differently." *Lisa*, 940 F.2d at 43. Dr. Root's evaluation partially confirms diagnoses made by "other sources," 20 C.F.R. § 404.1513(d), who had treatment relationships with Simonds, including Maggie Comparetta, a licensed marriage and family therapist; Leona Brown, a licensed clinical mental health counselor; and Lawrence Seavey, a vocational rehabilitation counselor. The ALJ afforded little weight to the opinions of these sources,

particularly to that of Comparetta, partially on the grounds that the record did not support them.[3] (*See* AR 13.) Dr. Root's evaluation supports these opinions, and thus there is a reasonable possibility that this evidence would have influenced the ALJ to decide Simonds' application differently. Moreover, although Dr. Root did not have an ongoing treatment relationship with Simonds, he did meet with and interview Simonds on at least one occasion. (*See* Doc. 24-1 at 1.) In contrast, agency consultant Dr. Patalano, whose opinion the ALJ afforded "[g]reater weight" (AR 13), never met with Simonds. The ALJ would have had to take this factor into consideration in comparing and analyzing Dr. Patalano's opinion with Dr. Root's evaluation. *See Havas v. Bowen*, 804 F.2d 783, 786 (2d Cir. 1986) ("opinions of nonexamining medical personnel cannot in themselves constitute substantial evidence overriding the opinions of examining physicians"); *Velazquez v. Barnhart*, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007) ("[a] psychiatric opinion based on a face-to-face interview with the patient is more reliable than an opinion based on a review of a cold, medical record"). Also noteworthy, Dr. Root's evaluation is relevant to Simonds' condition during the time period for which benefits were denied, given that it was made only approximately four months after the date last insured and prior to the ALJ's issuance of a decision. *See Tirado v. Bowen*, 705 F. Supp. 179, 182-83 (S.D.N.Y. 1989).

Finally, I find that Simonds meets the third prong of the three-part test for "new evidence" – whether there is good cause for his failure to present Dr. Root's evaluation

[3] As noted earlier, the ALJ also did not possess Comparetta's treatment notes at the time that she issued her decision. (*See* Doc. 12 at 6.)

earlier. The Second Circuit has held that "'[g]ood cause' for failing to present evidence in a prior proceeding exists where . . . the evidence surfaces after the [Commissioner's] final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." *Lisa*, 940 F.2d at 44. According to Simonds, good cause exists for his failure to present Dr. Root's evaluation prior to the ALJ's decision because (a) he was not represented by counsel at the administrative hearing; (b) he was unable to read the compact disc which contained the medical records presented to the ALJ prior to the hearing; and (c) he did not understand how to procure medical records from his medical providers. For these reasons, even assuming that Simonds was aware of the existence of Dr. Root's report at the time of the administrative hearing or immediately thereafter, Simonds claims that he was unaware that the report was not part of the record before the ALJ and thus did not bring it to the ALJ's attention at the hearing or at any other time prior to the ALJ issuing a decision.

Clearly, a *pro se* social security disability claimant is not entitled to automatic remand as a result of an unfavorable administrative ruling. *Reyes v. Harris*, 486 F. Supp. 1063, 1069 (S.D.N.Y. 1980). However, when – as here – a claimant is handicapped by lack of counsel, ill mental health, and limited education, the court has a duty to make a "searching investigation" of the record to ensure that the ALJ "scrupulously and conscientiously" probed into all relevant facts and safeguarded the claimant's rights by assisting him at the hearing. *Gold v. Sec'y of Health, Educ. and Welfare*, 463 F.2d 38, 43 (2d Cir. 1972) (quoting marks omitted); *see also Hennig v. Gardner*, 276 F. Supp. 622, 624-25 (N.D. Tex. 1967).

The transcript of the administrative hearing demonstrates that the ALJ attempted to provide a fair hearing for Simonds. The ALJ explained the administrative process to Simonds in some detail, and advised Simonds of his right to proceed with or without a representative. (*See* AR 24-28.) The ALJ confirmed with Simonds multiple times that he wished to proceed with the hearing unrepresented. Unfortunately, the transcript of the hearing also demonstrates that Simonds was ill-prepared to defend himself and was virtually incapable of obtaining and submitting evidence in support of his disability claim. In relevant part, the transcript reads:

> ALJ: Now in looking at the record there really are no medical records from December 2006, the date you alleged you became disabled, until March 2008, the records out there that haven't been considered that cover that period.
>
> CLMT: Are you asking me if there are?
>
> ALJ: Yes.
>
> CLMT: I don't like doctors.
>
> ALJ: The question is, are there records out there?
>
> CLMT: I can't tell you if yes or no because *I don't know what's out there on medical records, because I don't do doctors all that well*.
>
> ALJ: All right. *Do you understand the issues that are involved?*
>
> CLMT: *Kind of. I'm not really too sure.*
>
> ALJ: Do you want to continue the hearing and get an attorney or other representative to represent you?
>
> CLMT: No.
>
> ALJ: Well, before we go forward I want you to understand the issues, so what questions do you have?

CLMT: I don't know. *I'm scared. I don't know what to say.* I've got –

ALJ: Have you looked at the exhibits that have been submitted in your case? Have you read the record?

CLMT: *I don't have any of the records.*

ALJ: Did you not get a disc?

CLMT: I did, but I don't have a computer. I don't do computers.

ALJ: Okay, you didn't -- you haven't looked at it today?

CLMT: *I haven't looked at anything because I don't work with computers.* I don't know much about them.

ALJ: Well, then I'll ask you again. Would you like to postpone the hearing and take the disc to an attorney or other representative, and discuss what's been submitted in your case and talk about the issues involved?

CLMT: *I don't know what to say. I'm scared shitless here, okay.* I don't know what to say. I'm doing everything I can, and I don't know.

ALJ: Well, my concern is I want you to have a fair hearing. And that's difficult if you don't understand the issues and you haven't looked at the . . . evidence within it, and you don't know whether all the evidence out there has been submitted.

CLMT: *Even if I looked at the evidence, I probably wouldn't understand it anyway.*

ALJ: That's why I'm asking if you'd like to get a representative.

CLMT: No, I don't. I don't -- no. No, I don't want a representative.

ALJ: All right. Again, any particular questions about the issues?

CLMT: Did you guys receive paperwork from therapists that I go through?

ALJ: A particular therapist?

CLMT: Maggie Coppereno [phonetic) .

ALJ: Okay. There were some notes in there from her. Six pages.

CLMT: I mean that I'm -- *right now I'm going through an anxiety attack. Because I was under the understanding that when I come in front of you, that Larry Seavey was going to sit here with me.*

ALJ: Well, he can sit there with you if you don't want him to testify. Do you want to take a minute and go talk to him outside?

CLMT: No. I'm okay, I think. You don't understand. I have to live with this condition every day. My son is 6 years old and he has things that he'd like to do in the outside world. And I don't dare to go out in the outside world with my son. I force myself to go to his school and do things just so I can be there for him.

ALJ: You'll get an opportunity to tell me about that. But before we proceed with testimony, I just wanted to make sure that you understood that you have a right to a representative and that you understand the issues. There are notes from Maggie dated from August 2008 to June 2010.

CLMT: I still see Maggie too.

ALJ: Seen her since June?

. . .

CLMT: Yeah. I have a meeting with her the 29th of this month. I met with her the 9th of this month . . . and she helps me out. *I mean I don't know what to say. I'm scared.*

ALJ: Well, *you're kind of giving me mixed signals here*. So --

CLMT: How am I giving you mixed signals? I mean --

ALJ: *You're telling me that you don't really understand and that you're scared, but saying that you don't want a representative.*

CLMT: I've waited two and a half years for this whole process to go through. I mean --

ALJ: Do you want to proceed without a representative?

CLMT: Yes, ma'am.

ALJ: All right.

CLMT: I just don't -- I can't -- my life is rough enough. I don't want to postpone anything.

ALJ: Well, we'll get into the testimony in just a couple of minutes.

CLMT: Okay.

. . .

ALJ: Are you able to read the waiver, Mr. Simonds?

CLMT: I don't know what it says. I don't care. I can't read all that well.

HA: I'll read it to you. It says, "I understand my rights of representation at the hearing. I voluntarily waive this right and I request to proceed without a representative. I acknowledge that prior to receiving the Notice of Hearing, I received a list of organizations that provides legal services." Okay?

CLMT: Thank you.

HA: You're welcome.

CLMT: 5/10?

HA: 6/21.

CLMT: I'm sorry. *I'm just nervous as hell.*

. . .

ALJ: Are there any other medical records or reports or other documents you wish for me to consider?

CLMT: *As long as you got what you need. I don't know.*

ALJ: As long as I have what?

> CLMT: Everything you need. I don't know. I don't have anything else, no.

(AR 28-32, 34 (emphases added).)

This portion of the transcript of the administrative hearing demonstrates that Simonds may have been having an anxiety attack and was suffering from symptoms of social phobia during the hearing. In response to the ALJ's inquiry regarding why he is unable to work, Simonds stated: "I have anxiety attacks every day I go out. It feels like when I go out into the public, it feels like my heart's going to pound right out of my chest. I get nervous. My hands get all sweaty *like they are now*." (AR 37 (emphasis added).) Although Simonds was in fact ultimately able to testify about his impairments, and although the ALJ repeatedly informed him of his right to counsel and did her best to afford Simonds a fair hearing, it appears that Simonds was not able to fully appreciate the need to be represented by counsel and possibly was influenced by his mental illness to hastily proceed with the hearing representing himself rather than postponing it to another date when he could appear with counsel. Moreover, the transcript makes clear that Simonds was unable to describe or proffer to the ALJ the relevant medical evidence. Therefore, the ALJ had a heightened duty to acquire such evidence on her own. *Stewart v. Cohen*, 309 F. Supp. 949, 956 (E.D.N.Y. 1970) ("When an individual appears without an attorney, the hearing examiner has a duty not to be a mere umpire, but to see that all relevant facts are developed."). Yet the fact remains that multiple material pieces of evidence were not included in the record, including Dr. Root's opinion, discussed above. The Second Circuit has held that even if an ALJ has determined that the medical

evidence of the Commissioner (such as the report of agency consultant Dr. Joseph Patalano, as the ALJ relied on here) is more persuasive than that of a *pro se* litigant (such as the notes and opinion of Comparetta and the evaluation of Dr. Root, here), "a remand is still appropriate due to the ALJ's failure to assist th[e] *pro se* litigant in securing all of the relevant medical testimony." *Hankerson v. Harris*, 636 F.2d 893, 896 (2d Cir. 1980) (citation omitted).

It must be recognized that Simonds obtained an attorney within approximately two months of the ALJ's issuance of her decision. (*Compare* AR 15 *with* AR 105.) And this attorney could have (and indeed should have) attempted to submit all the missing evidence to the DRB prior to it issuing a decision on the claim. However, it is unlikely that such submission would have mattered, given that the DRB did not complete its review of the claim during the time allowed, and thus the ALJ's decision became final by default. (AR 1.) Moreover, the Second Circuit has held that "the [Commissioner] expressly authorized claimants to submit new evidence to the Appeals Council without a 'good cause' requirement." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). Here, Dr. Root's evaluation was specifically mentioned in evidence submitted to the DRB prior to the issuance of a final administrative decision (*see* AR 105-06); yet the Commissioner failed to take steps to obtain and review such evaluation.

Viewing the matter liberally in favor of the *pro se* claimant[4], given the circumstances of Simonds' administrative hearing – particularly the omission of certain material medical evidence from the record before the ALJ – I find that the interests of justice require a remand for a new hearing and decision. As Simonds is now represented by counsel, it is likely that the shortcomings discussed above will be corrected on remand. Further, for the sake of completeness, I recommend that, on remand, the ALJ should consider not only Dr. Root's April 2010 evaluation, but also the treatment notes and August 2010 opinion letter of Maggie Comparetta, the June 2010 letter of Lawrence Seavey, and the September 2010 statement of John Simonds, all of which appear not to have been considered by either the ALJ or the DRB.[5]

**Conclusion**

As Simonds has satisfied the criteria for a remand due to "new evidence," I recommend that the Court GRANT Simonds' motion to remand (Doc. 24), and REMAND this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g) for consideration of the above-described evidence. Given this recommendation, and because

---

[4] *See, e.g., Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975) ("Although an examination of the record reveals that the [Commissioner's] determination is at least technically supported by substantial evidence, this Circuit has observed that the Social Security Act is remedial or beneficent in purpose, and, therefore, to be broadly construed and liberally applied. Consistent with this view of the Act, courts have not hesitated to remand for the taking of additional evidence, on good cause shown, where relevant, probative, and available evidence was either not before the [Commissioner] or was not explicitly weighed and considered by him, although such consideration was necessary to a just determination of a claimant's application.") (quotation and citations omitted).

[5] The Court should reject the Commissioner's argument that Simonds waived his right to a sentence six remand because he failed to file the instant motion "at the earliest opportunity." (Doc. 25 at 1.) The only case cited in support of this argument is from the Seventh Circuit (*id.* at 1-2); and that case holds merely that a claimant fails to timely move for a sentence six remand when he neglects to file such a motion "in the district court." *Burke v. Astrue*, 306 F. App'x 312, 316 (7th Cir. 2009). Here, Simonds made his motion "in the district court," prior to the issuance of a court ruling on the parties' pending sentence four motions and prior to an objection or appeal being filed with respect to such ruling.

the new evidence may fill some of the gaps noted in the ALJ's initial decision, I find it unnecessary and futile to consider the arguments presented in the parties' cross-motions filed pursuant to sentence four of section 405(g). (Docs. 12, 15.) On remand, however, the ALJ should reconsider each of her findings in light of the new evidence. Particularly, the ALJ should reconsider her determination to afford great weight to agency consultant Dr. Patalano's opinion (*see* AR 266-83, dated June 2008), given that he did not have in his possession at the time that he rendered such opinion all relevant treatment notes and opinions from Simonds' treating or examining sources, including those of therapist Maggie Comparetta (*see* AR 106-09, dated October 2009 through August 2010, and AR 212, undated), mental health counselor Leona Brown (*see* AR 298-304, dated September to November 2008), vocational rehabilitation counselor Lawrence Seavey (*see* AR 213-16, dated August 2008 through June 2010, and June 2010 letter which does not appear in record), and Dr. Richard Root (*see* Doc. 24-1, dated April 2010).

Dated at Burlington, in the District of Vermont, this 11th day of January, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).